The first case is Kuzma v. Department of Justice. Yes, Your Honor. Good morning, Your Honors. My name is Barry Bachrach, and with me is Co-Counsel Attorney Dea Irwin, and we represent Michael Kuzma in this matter. This case arises out of, it's a FOIA case that arises out of the FBI's failure to fully respond to the request for documents about the murder of Perry Ray Robinson, who was a black civil rights leader and civil rights worker and father of Dr. Martin Luther King, and he was murdered during the occupation of Wounded Knee in 1973. Let me, I'm going to address specific aspects of the documents. The first documents that we're claiming that should have been addressed is the so-called June mail. We're challenging in that is that it's our contention that the FBI failed to do an adequate search for the June mail. And how do they, how do we know that? What is deficient about what's stated in the Hardy declarations about what was answered? Number, you need to understand what June mail is, Your Honor, and then I can explain how, what was done incorrectly. June mail, according to a Hardy affidavit in the Lardner case, is June mail refers to certain documents concerning microphone or telephone surveillance, which are filed separately from the main file and maintained in special file room, which is a secure storage facility. This is how it was highly classified material that was kept until 1978 they stopped keeping it. So now if you look at that and you look at what Mr. Hardy said the search they did, the initial search they did was they went and manually looked where the June mail should have been and it wasn't there. And then a year later they indicate that they again looked but there's no specifics as to what they did or what they, they just said they looked and couldn't find it again a year later. Do I misunderstand? I thought that the June mail system was discontinued at a certain point and then the files were reintegrated into the normal files. As I read his affidavit what he said was that it was discontinued and so the documents were integrated into the main index so that there'd be an index and that's where they found the fact that there is a document. But that didn't, as far as my reading of everything and I don't think the affidavit said anything different, the June mail itself, the still kept segregated. Well but they said they looked where they were supposed to be. I'm not sure I understand why there is a problem with that if these particular documents are missing. That is, as I understood it, this material was not classified in the technical sense. It was covert because it was all illicit and J. Edgar Hoover hid it somewhere in effect in a secret file room or something of the kind but then when that all came to light the material was then dealt with in a more appropriate way. So now it's been indexed and they know where it is theoretically and they went and looked there and these particular documents were missing. What am I missing in interpreting the Hardy affidavit that way? What I believe you're missing, Your Honor, as I interpret it, is that all Mr. Hardy, because he doesn't give the detail you did, Mr. Hardy said it was integrated into the main index. But if that was the case and if you could have found it in the main index they wouldn't have had to do the additional search which they did where it should have been physically located. Well, whatever is in an index, you look in the index, I guess, I don't know, and the index tells you where it's supposed to be. You then look where it's supposed to be for the physical documents and they're either there or they're not. But I'm not understanding why in 2016 as opposed to in 1974 an FBI search that looks for the June mail where it's supposed to be is somehow inadequate. I understand how in 1974 it wasn't where it was supposed to be because it was hidden but that all changed. Well, I'm not sure it changed as I read in the 2012 Lardner case that that case still talks about the documents actually being physically segregated in a separate . . . Well, wherever they're kept that is now where they're supposed to be. I mean, if you are right, I mean, if you're interpreting this correctly, we'll hear something from the government about this, it would be an extraordinarily disingenuous thing for the government to say that they looked where the documents are supposed to be if they did not look in what they now know is a secret room where those documents are kept, right? That would be a rather extraordinary thing for them to say. Disingenuous or not, I'm just saying in 2012 the District of Columbia in the Lardner case indicated they're filed separately from the main file, maintained in a special file room, which is a secure storage facility which access is restricted. When we're talking about documents that have access restricted, there should be . . . you know, where did the document go? Documents that are in a restricted area just aren't picked up and brought other places. There should . . . there's no evidence here that . . . Yes, you've never worked for the government if you don't think the documents don't disappear from where they're supposed to be, however restricted they are. I understand this reality, Your Honor, but if I could wrap this point up because I think it's a burden to demonstrate beyond reasonable doubt they've conducted a reasonable search. I would submit that on page 164 Mr. Hardy's statements that are unspecified and just say we looked, it wasn't there, and then a year later we looked again that I would submit, Your Honors, is not meeting the government's burden and in fact there's a case, the Steinberg v. Department of Justice, we were . . . it was concluded that the search was inadequate because it failed to describe in any detail what records were searched, by whom, and through what process, and that's what we're looking for. What did you do is basically . . . just saying we went and couldn't find them wasn't enough. If I could move on . . . Thank you. I'd like to move on to the grand jury issue and . . . I have a question about that as well. I think you have a very good point that there is recent and maybe not so recent authority saying that grand jury secrecy can sometimes be overcome when information is of historical importance but is no longer . . . is of only historical significance at this point in terms of active government interest. But all of those cases occur in the context of someone going to the district court that has a charge of that grand jury and seeking release of the grand jury minutes. It seems to me that the FBI has no authority to release grand jury material under 6 . . . secret under 6E because the FBI unilaterally determines that it doesn't matter anymore. The FBI is still under the obligation of grand jury secrecy and so it would seem to me, and again explain to me why I would have this wrong, that they've made an adequate FOIA response. If you want to go to wherever this grand jury was held and seek release of all the minutes of the grand jury, God bless, and that court will have that. That can be released. Two cases, quick. Alger Hiss was a FOIA case and in 1999 . . . in 1977 there was a reported decision from the District of Southern New York which rejected the request. In 1999 under a FOIA request, Alger Hiss grand jury records were released. In 2011, the District of Columbia, the Richard Nixon grand jury testimony was released pursuant to a FOIA request. The final point I'd like to make is with respect to . . . Let me ask you, those FOIA requests were they made . . . which court were they made to? How did that relate to the court that actually established the grand jury and supervised the grand jury? Were they different or was it the same court? It looks to me like you're referring to the District Court. Right. They were the courts that had the grand jury, but they were brought . . . for example, Alger Hiss in 1999 was a FOIA request to the court that had the grand jury. Correct. But not to the FBI. If I'm the FBI and you come to me and say, please give me grand jury material, I say, no, I can't. I'm not sure that this court then says, no, FBI, you made a mistake. You should have given that out because it's only of historical information. You see what I'm saying? You'd have to double check. I thought that those were made at the FBI because they came up through FOIA, the FOIA process. They might have even come up through that route, but the court that was adjudicating the question was the court that also had the grand jury before it, and presumably had some direct connection with the grand jury. Okay. I understand, Your Honor, what you'd be saying is that this should be brought in the Southern District of South Dakota or the Western District of South Dakota because that's where the grand jury was. I'm just asking questions, suggesting a possibility here of a way of distinguishing the cases that you brought. And I understand that. And then the final point on the grand jury is the case where Craig case that this court reaffirmed the special circumstances was akin to a FOIA case. I understand they asked for the records to be unsealed, but it was a fellow working on his doctor who wanted information concerning that. And even though it was unsealing the records, it was akin to a FOIA request. And I'd like to save, I notice I'm, if I could save my last minute. Your rebuttal time. Surely. May it please the court. My name is Mary Roach. I'm an assistant United States attorney in the Western District of New York. I represent the United States in this action. The district court properly determined that the Department of Justice performed a reasonable and adequate search. And it also correctly determined that the exemptions were properly applied in this case. Frankly, most of the argument that I was going to make this morning was covered by Judge Lynch in his questioning. And at this point, I would be happy to respond to any questions, which the court has. The one other thing I would point out is that there was, let me just, in the June mail, there was a designated space, physical space for the June mail, but it was integrated into the index. Yes, that's my understanding. My understanding is that after 1978, all of the information that was contained in that And that allowed the FBI in this case to determine that there was in fact June mail, which was potentially responsive to the request. And the June mail at that point was still segregated in some repository for June mail, which they then examined. I believe that is the case, Your Honor. Neither the Hardy declaration nor the case law has, at least to me, made a clear indication as to the exact location. But what is clear is, oh, I'm sorry. It's a pretty common request, isn't it, from FOIA, by plaintiffs who are looking for FOIA releases to ask for June mail? I believe it is, Your Honor. And that is why it was identified here. And in addition, the manual search was undertaken on two occasions to try to find it. So clearly, there is a location, whether it is segregated from the rest of the materials or whether it is combined with everything, it was still in a location where it should have been able to have been found. The other thing I would point out is that neither the Hiss nor the case regarding the Nixon grand jury materials were cited by the appellant in this brief. And we did not address that. And I frankly am not prepared to address the issues raised by those cases. However, I absolutely agree that this court should not overturn the district court's determination that the FOIA search was properly conducted and that the exemptions were properly applied. With respect to the grand jury material, as Judge Lynch pointed out, the FBI had really no alternative. According to 6E of the Federal Rules of Criminal Procedure, that is a statute of exemption under Exemption 3. And everybody concedes that the material that the FBI located was grand jury material. That alone was sufficient to allow the application of Exemption 3. If there are no other questions, I would simply ask that the court would affirm the determination of the district court below. Thank you. If I may, Your Honors, quickly on the grand jury, I want to draw Your Honors' attention to Appendix 135 because much of the information concerning this matter has been made public and we put in an affidavit from Mr. Paul DeMaine indicating how much of the information concerning Mr. Robbins' death is already in the public domain, as well as the New York Times article which discusses it in depth. In my last 30 seconds, I would like to quickly address the confidential informants, Kamuk Nichols-Ecafee and Mr. Searle Chapman. It is our position that they were officially acknowledged, that the Kamuk testified in three trials, Mr. Chapman testified in one trial, and- Your argument is that that is what constitutes the official acknowledgement? There are also motions in those trials, as well as the New York Times article where Ms. Nichols-Ecafee gave her a codename Maverick, Mr. Chapman was given a codename Sierra, and that they were asked whether she would wear a wire and act as an informant for them, which she did. In your brief, which discusses this issue rather briefly, there is a reference to the New York Times article which alleges, asserts, outs, if they're accurate, these people as informants, but there's no reference to anything that I would regard as an official acknowledgement. Now you say these people testified at trial. Is that in one of the declarations? Because I don't see it in your brief. It's in Mr. Kuzma's third declaration, I believe. I have a- Where would we find that? Because in the brief, you refer only to declarations of yourself and of Mr. DeMaine. So which declaration is it that discusses whether these informants testified at trial? See, it seems to me it would be quite different. If somebody is sitting in a courtroom and testifies and is examined or cross-examined as to whether he's been a paid or unpaid confidential informant for the FBI, the government has no longer, it seems to me, any interest in saying this person's confidential. If some newspaper reporter says, unnamed sources tell me this guy was an informant, that's a completely different matter. And I had it written down, Your Honor. It's Mr. Kuzma's third affidavit. It's actually his second affidavit, at A186 to A187, sorry. And if you look at page 187, Mr. Kuzma indicates Sir Chapman testified in the case of U.S. V. Vine, Richard Marshall, and Kamuk Nichols testified in the cases of U.S. America v. Fritz Lutzenclaw, and in the case of State v. John Graham, and there were also issues raised in those trials about them being paid, and there were motions concerning, and that's on page A188. She admitted the FBI paid her $24,000 in 2003, and $25,000 in 2004. And so I would submit, Your Honor, that it, I hate to use the word disingenuous, but I, in- I hate to use, I would hate to use the word disingenuous of a response, any response the government made in this court to a brief that does not cite the appendix pages that you're now referring to, and that does, makes no reference to the fact, which seems to me a highly significant fact, if it is one, that the witnesses testified in open court. Where your brief is saying, the New York, some guy from the New York Times, you know, the fake news, tells us that he found out that these people are informants. So that struck me as, well, that's not an official acknowledgement end of story. Now it seems to me you're making a quite different and possibly very potent argument that was not made in the brief. And I I'd have to re-read the briefs, Your Honor. My last point on that would be, I believe that oral argument can expand on the briefs, and that the mere fact that we didn't cite those pages in the brief, and they are very important, should not be held against us, or held against the fact that those are the facts. They're in the record. But at any rate, there is. I'm sorry. No, except that now you're on rebuttal, and the other side doesn't have a chance to respond. And they didn't have a chance to respond based on anything you wrote in the brief. The, well. At any rate, there's also authority that says even if a source's identity has been revealed, that does not mean that all information that a source has provided falls outside of the exemption 7D as a result. Yes, Your Honor, there's a process. If they acknowledge that they were a informant, then comes the next step, which they can then go through and still raise the other exemptions with respect to remaining information. But we want to at least get to the second step, which is have them acknowledge they were informants, and then go through the documents that relate to them, and let us know what's producible and what's not. I think we have your arguments. Thank you both. Thank you very much, Your Honors.